

**FILED**

Feb 13 2015, 7:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Amanda O. Blackketter
Blackketter Law Office
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Kevin A. Mathews,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 13, 2015

Court of Appeals Case No.
73A04-1406-CR-288

Appeal from the Shelby Circuit Court

The Honorable Charles D. O'Connor, Judge

Trial Court Cause No.
73C01-1009-FA-10

**Vaidik, Chief Judge.**

# Case Summary

[1] Kevin A. Mathews appeals his conviction for Class B felony robbery. The victim in this case was trying to redeem her casino tickets at a kiosk when Mathews walked off with them; the victim chased after him and was injured.

Due to the victim's declining health, she was unable to return to Indiana for Mathews' jury trial. The State notified defense counsel that it wanted to treat the victim's upcoming deposition as a trial deposition. The State and defense counsel were at the Shelby County Prosecutor's Office, and the victim was in Louisiana. The deposition was conducted via Skype and then transcribed. Although Mathews was out on bond and had notice of the deposition, he did not attend the victim's deposition. The victim did not attend Mathews' jury trial, and her deposition was admitted into evidence.

[2] Mathews argues that the admission of the victim's deposition violated his rights under Article 1, Section 13 of the Indiana Constitution because he was not present at the deposition. We find no violation. First, the victim was unavailable at the time of trial because of her declining health. Next, the victim's deposition was obtained pursuant to procedures designed to elicit the truth. That is, the victim's testimony was given under oath and transcribed by a court reporter.

[3] Finally, we find that Mathews waived his right to a face-to-face confrontation by failing to attend the victim's deposition. Mathews was free on bond, yet he did not attend the deposition. The State formally extended an offer to Mathews to attend the deposition, but defense counsel gave no reason at the deposition for his client's absence.

[4] Because Mathews waived his right to confront the victim face to face, we affirm the trial court.

## Facts and Procedural History

[5] On September 25, 2010, sixty-year-old Lucille Webert went to Indiana Live! Casino in Shelbyville, Indiana.[1] Lucille lived in Louisiana, but she was visiting her daughter in Indiana. Around 5:55 p.m., Lucille went to a cash redemption machine—called kiosk 6—in order to redeem two "TITO"[2] tickets, which the Indiana Gaming Commission considers currency. Tr. p. 72, 100. One ticket was worth 50 cents and the other ticket was worth $183.50. One of the numbers printed on the $183.50 ticket was Lucille's player number.[3] What followed was captured on several of the casino's 1200 surveillance cameras. *Id.* at 97; Ex. 10 (video). Lucille was having difficulty redeeming her tickets. Lucille turned, and Mathews was standing there. Mathews tried to redeem the tickets for Lucille, but he was also unsuccessful. Mathews then walked away with Lucille's tickets. Ex. 10. Lucille chased Mathews, grabbed his shirt, and the two of them struggled. *Id.* The struggle ended when another casino patron grabbed Mathews. *Id.*

[6] An Indiana Gaming Commission agent was called down to the casino floor to investigate. He found Mathews in possession of two TITO tickets, one worth 50 cents and the other worth $183.50. The $183.50 ticket was tied to Lucille's

---

[1] The casino is now called Indiana Grand Casino.

[2] "TITO" is an abbreviation for ticket in/ticket out. Tr. p. 71.

[3] At the time the casino used a system called Patron Management System to track the activity of its patrons and to reward them. Tr. p. 72.

player number. Lucille had an injury to her right ring finger and received treatment from the casino EMT. But because of the extent of the injury, Lucille was transported by ambulance to the local hospital, where she diagnosed with and treated for a dislocated finger. Mathews was arrested.

[7] The State charged Mathews with Class A felony robbery (serious bodily injury), Class D felony theft, and Class C felony battery resulting in serious bodily injury. Mathews, who lived in Indianapolis, was free on bond awaiting trial.

[8] On February 23, 2012, the State filed a motion for ruling on deposition. The State alleged that Lucille, who still lived in Louisiana, was in declining health. Specifically, the State noted that Lucille, who was now sixty-two years old, had recently undergone chemotherapy for cancer, had eye surgery, and was under the care of several doctors that required medical visits on a regular basis. Accordingly, the State asked that Lucille's upcoming deposition be considered a trial deposition that would be admitted into evidence at trial pursuant to Trial Rule 32. At an attorneys-only conference on February 27, the trial court ruled that Lucille's deposition would proceed and that it would determine the deposition's admissibility at trial. Appellant's App. p. 6 (CCS entry).

[9] Lucille's deposition took place via Skype the following week on March 5, 2012. Both the deputy prosecutor and defense counsel were present at the Shelby County Prosecutor's Office; Mathews was not present. Lucille was in Louisiana with a Louisiana attorney who identified Lucille by her driver's license. Lucille was then placed under oath. The deposition was audio-

recorded and later transcribed by a court reporter. *See* State's Ex. 16, p. 29, 57. Before the deposition started, defense counsel said:

> For the record, defense would object. . . . I don't want the fact that Mr. Mat[]hews is not here to serve as a waiver of any right he may have under the Indiana or federal constitution, and I don't want my presence here to constitute a waiver of any issue he may have under the federal or state constitution.

*Id.* at p. 34-35. The deputy prosecutor added, "Also, on the record, let it be known that his client was entitled to be here, and the offer was extended for his client to be here." *Id.* at p. 35. Defense counsel conducted a thorough cross-examination of Lucille, including establishing that Mathews did not threaten Lucille when he gained control of the TITO tickets and that Lucille injured her finger when *she* grabbed him. *Id.* at p. 43-53.

[10] Before trial, Mathews filed a motion to exclude Lucille's deposition based on his absence at the deposition. Appellant's App. p. 149-50. A hearing was held in February 2014. According to defense counsel,[4] the issue boiled down to whether Mathews "had the opportunity to confront and cross examine [Lucille] and whether his rights to confront/cross examine would be violated by allowing essentially a deposition testimony to be read into the record . . . ." Tr. p. 48. Defense counsel continued, "I don't believe that [Mathews] ever wa[i]ved his right to be personally present, confront, and cross examine

---

[4] Mathews' defense counsel at this hearing was different than his defense counsel when Lucille's deposition was taken two years earlier.

[Lucille]." *Id.* at 49. Defense counsel also said that "I don't think it's clear that my client knew that the deposition was taking place . . . ." *Id.* The State highlighted that the defense was on notice that it wanted to use Lucille's deposition at trial—because of its February 23, 2012 motion for ruling on deposition—and that it formally extended an offer to Mathews to attend the deposition; however, Mathews still did not attend the deposition. *Id.* at 50. Foreshadowing its ruling, the trial court said "there's nothing in the deposition or anything that's been presented to me that indicates that Mr. Mathews was instructed that he couldn't be present and he certainly had the right to be present and why he wasn't present, I don't know." *Id.* at 54.

[11] After the hearing, the trial court issued the following order:

> 1) The alleged victim in this case, Lucille Webert, currently suffers from breast cancer, is a resident of Louisiana and is currently unable to travel without assistance for any reason. Her physician reports that she is unable to attend any court dates due to her current condition. (See letter from Dr. Gary Burton dated February 7, 2014). She also suffers from diabetes, heart palpitations and neuropathy and must use a walker and a power chair.
>
> * * * * *
>
> 3) Ms. Webert's deposition was taken by Skype on March 5, 2012, while she was in her home state of Louisiana.
>
> 4) Present during the deposition were Deputy Prosecutor Jennifer Kinsley and then defense attorney Brent E. Eaton. Defendant was not present and was not incarcerated at that time. At the time of the deposition, the Deputy Prosecutor established that the Defendant was entitled to be present and that an offer had been extended to the Defendant to be present. The Deputy Prosecutor and then defense counsel Eaton were in Shelbyville at the time the deposition was conducted. Ms. Webert was placed under oath.

5) Indiana Rule of Evidence 804 allows admission of prior recorded testimony when the prosecution shows the declarant/witness is unavailable. There must also be sufficient identification of the parties and the issues.

6) Testimonial statements by a person who is absent from trial are inadmissible unless the person is unavailable and the defendant had a prior opportunity to cross-examine the person. *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

7) Evidence Rule 804 provides that prior testimony can be admitted if the party against whom the evidence is offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

8) Defendant ha[d] the opportunity to be present; no explanation was offered as to his nonappearance at the deposition.

9) There is no indication in the deposition of Ms. Webert that Defendant was denied the opportunity to attempt to undermine her or her testimony by asking any questions he saw fit. *Berkman v. State*, 976 N.E.2d 68 (Ind. Ct. App. 2012).

10) Defendant's motion is denied.

Appellant's App. p. 188-189.

[12] A jury trial was held in March 2014. Mathews renewed his objection when the State offered Lucille's deposition into evidence. The trial court overruled the objection, and Lucille's deposition was read into evidence and admitted as State's Exhibit 16. The jury found Mathews guilty of the lesser-included offense of Class B felony robbery, Class D felony theft, and the lesser-included offense of Class A misdemeanor battery. The court entered judgment of conviction on Class B felony robbery only and sentenced him to eleven years with eight years executed and three years suspended to probation.

[13] Mathews now appeals.

# Discussion and Decision

[14] Mathews contends that the admission of Lucille's deposition at trial violated his rights under Article 1, Section 13 of the Indiana Constitution because he was not present at the deposition. He does not challenge the fact that the deposition was conducted by Skype while Lucille was in Louisiana and his defense counsel and deputy prosecutor were in Indiana.

[15] The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" Similarly, Article 1, Section 13 of the Indiana Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face[.]" "To a considerable degree, the federal right of confrontation and the state right to a face-to-face meeting are co-extensive." *Brady v. State*, 575 N.E.2d 981, 987 (Ind. 1991). But because Indiana's clause contains both the right to cross-examine and the right to meet witnesses face to face in courtroom during trial, Indiana's right to confrontation is more generous. *Harris v. State*, 964 N.E.2d 920, 924 (Ind. Ct. App. 2012), *trans. denied*.

[16] Neither the Sixth Amendment nor Article 1, Section 13 has been interpreted literally to guarantee a criminal defendant all rights of confrontation at every trial for every witness; otherwise, no testimony of any absent witness would ever be admissible at trial. *State v. Owings*, 622 N.E.2d 948, 951 (Ind. 1993). Thus, the right of confrontation "must occasionally give way to considerations

of public policy and the necessities of the case." *Id.* (quotations omitted). As our Supreme Court explained in *Brady*:

> The [Indiana] right is not absolute. It is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial again because he has died, become insane, or is permanently or indefinitely absent from the state and is therefore beyond the jurisdiction of the court in which the case is pending. In such cases, there has been a prior face-to-face meeting with the opportunity to cross-examine the witness before a trier of fact in the same case and a necessity for the reproduction of testimony exists.

575 N.E.2d at 987 (citation omitted).

[17] Indiana's right to confrontation is an individual privilege relating to the procedure at trial and therefore may be waived. *Id.* For a waiver to be effective, there must be an intentional relinquishment or abandonment of a known right or privilege. *Owings*, 622 N.E.2d at 952. The determination of whether a defendant has waived a constitutional right depends on the circumstances of the particular case, including the conduct of the defendant. *Id.* Waiver can occur by word or deed. *Id.* Where there is no showing in the record that a defendant is unable to attend a deposition and he makes no objection to it proceeding, the defendant waives his right to confrontation even if the witness is unable to testify at trial. *Id.* Where, however, neither the defendant nor his attorney was given notice of the taking of a statement, no waiver has occurred. *Id.*

[18] This constitutional framework allows the use of prior deposition testimony provided that the trial court finds that the witness is unavailable and the statement bears sufficient indicia of reliability. *Id.* In short, a deposition that comports with the principal purposes of cross-examination provides sufficient indicia of reliability. *Id.* The focus of the test is not on whether the trial court believes the witness to be telling the truth, but rather on the process by which the prior statement was obtained. *Id.*

[19] We find this case to be similar to *State v. Owings*, a case in which our Supreme Court found that the defendant waived her right to a face-to-face confrontation by failing to attend the deposition of a witness. *Id.* at 953. The defendant was charged with Class A felony dealing in cocaine and Class D felony trafficking with an inmate for delivering balloons filled with cocaine to her son while he was an inmate at the Indiana Youth Center. The allegation was based on information from Orville Zook, who was also an inmate at the Youth Center. Defense counsel deposed Zook before trial. Although free on bond at the time of the deposition, the defendant did not attend the deposition. Zook later committed suicide, and the defendant moved to suppress the deposition on the grounds that its admission would violate her right of confrontation under the Sixth Amendment and Article 1, Section 13. The trial court granted the motion because it found "serious questions" as to Zook's credibility. *Id.* The State appealed.

[20] Our Supreme Court first found that Zook was unavailable pursuant to Trial Rule 32(A)(3)(a) ("the witness is dead"). Next, the Court found that the issue

was not whether the trial court believed Zook's deposition testimony but whether it was obtained pursuant to procedures designed to elicit the truth. *Owings*, 622 N.E.2d at 953. "Testimony given under oath, subject to penalties of perjury[,] and recorded by a court reporter has sufficient indicia of reliability." *Id.* Finally, the Court found that the defendant waived her right to a face-to-face confrontation by failing to attend the deposition. *Id.* Just like this case, the defendant was free on bond when the deposition was taken, and the Court presumed that she had notice of the deposition. *Id.* The Court noted that our legal system operates on the notion that notice to counsel is notice to the client. *Id.* at 953 n.1. The only information in the record tending to suggest that the defendant's absence from the deposition was not an intentional relinquishment of a known right came from defense counsel's remarks to the court that he thought the defendant was prohibited from attending the deposition because it took place at the Youth Center and officials had banned the defendant from visiting there. *Id.* at 953. However, defense counsel admitted that no request was made that she be allowed to enter the Youth Center or that the deposition be taken elsewhere. *Id.* Under these circumstances, the Court concluded that the defendant waived her constitutional rights to confront Zook face to face. *Id.* Accordingly, the trial court erred in suppressing Zook's deposition testimony. *Id.*

[21] We reach the same result as our Supreme Court in *Owings*. First, Mathews does not challenge the fact that Lucille was unavailable at the time of trial

because of her declining health.[5] Tr. p. 48 ("I think the Court's review of the medical records probably is a conclusion that this declarant is unavailable."). Next, Lucille's deposition was obtained pursuant to procedures designed to elicit the truth. She was sworn in by a Louisiana attorney before her deposition began. Defense counsel cross-examined Lucille. In addition, the deposition was audio-recorded and transcribed by a court reporter, and Lucille signed the deposition after it was transcribed.

[22] Finally, we find that Mathews waived his right to a face-to-face confrontation by failing to attend Lucille's deposition. Mathews was free on bond, yet he did not attend the deposition. Like our Supreme Court in *Owings*, we presume that Mathews had notice of the deposition. 622 N.E.2d at 953 n.1. There was an attorneys-only conference discussing the deposition seven days before the deposition took place. Moreover, the State said it formally extended an offer to Mathews to attend the deposition. At the March 2012 deposition, defense counsel—in order to make a record—objected on the grounds that Mathews was not present, but counsel did not object to the fact that the deposition was taking place and did not give a reason for his client's absence.[6] At the February 2014 hearing, defense counsel argued that it was not clear if Mathews knew

---

[5] Indiana Trial Rule 32(A)(3) provides that "the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . (c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment . . . ."

[6] Defense counsel described the objection as objecting "to the deposition proceeding as a trial deposition" as opposed to a discovery deposition "based upon [Mathews] not being present for the deposition." Appellant's App. p. 150.

about the deposition; however, this defense counsel was different than the one who attended Lucille's deposition two years earlier. And there is no other evidence in the record addressing why Mathews did not attend Lucille's deposition. Under these circumstances, we conclude that Mathews waived his right to confront Lucille face to face. We therefore affirm the trial court.

[23] Affirmed.

Baker, J., and Riley, J., concur.