ATTORNEYS FOR APPELLANT
John (Jack) F. Crawford
Crawford & Devane
Indianapolis, Indiana

Steven P. Stoesz
Stoesz & Stoesz
Westfield, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 29S05-0609-CR-322

RONALD C. HOWARD, JR.,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Hamilton Superior Court 3, No. 29D03-0206-FA-195
The Honorable Daniel J. Pfleging, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 29A05-0402-CR-101

**September 6, 2006**

**Rucker, Justice.**

After a trial by jury the defendant Ronald C. Howard, Jr., was found guilty of child molesting based largely upon the deposition testimony of a child witness who refused to testify at trial. Because there was no showing that the witness was unavailable for trial within the meaning of the protected person statute, the trial court erred in allowing the deposition into evidence. We therefore reverse the judgment of the trial court and remand this cause for further proceedings.

**Facts and Procedural History**

Howard and Tina Brooks were married in October 1994. C.C., Brooks' daughter from a previous relationship, was three years old at the time. In August 1997 Brooks filed for divorce, which became final in the winter of 1998. In late 1997 C.C. told Brooks' male companion that on various occasions between July 1996 and October 1997 Howard had sexually molested her. These allegations were reported to the Hamilton County Sheriff's Department, but no charges were filed as a result. Because of behavioral problems C.C. began psychological counseling in the summer of 2002. Apparently during one of the counseling sessions C.C. recounted her allegations against Howard. As a consequence, on June 24, 2002 the State charged Howard with four counts of child molesting as Class A felonies. In due course both sides conducted discovery, as a part of which Howard took C.C.'s pre-trial deposition. During this deposition C.C. gave details about Howard's alleged molestations.

During the November 2003 trial the State called C.C. as a witness. She was twelve years old at the time. After identifying Howard and testifying about homes where she had lived and schools she had attended, C.C. was then asked, "tell me please what rape means." Tr. at 481. She responded: "[s]omething that people do to little kids." The record shows that C.C. then started crying, refused to answer any more questions, and requested a break. Id. at 482. The break lasted approximately an hour, during which C.C. reportedly was crying and throwing up. After the break the trial court conducted a hearing outside the presence of the jury to determine whether C.C. was able to continue her testimony. The following exchange occurred.

> [Trial Court] Okay. Now you've met [the deputy prosecutor] before and she was asking you some questions just a few minutes ago, is that correct?
>
> [C.C.] Yes.
>
> [Trial Court] And I think the last question she asked you, you, you gave an answer to and then you started crying, is that right?
>
> [C.C.] Yes.
>
> [Trial Court] If [the deputy prosecutor] had some additional questions of you do you believe that you could answer those questions?

[C.C.]  No.

[Trial Court]  And can you give me an idea of why not or if there's anything I could do to make things more comfortable for you so that you could answer those questions.

[C.C.]  No.

[Trial Court]  You've had an opportunity in the past to answer any questions from [defense counsel], is that correct?

[C.C.]  Yes.

[Trial Court]  And on those days I believe [the deputy prosecutor] was there also, is that correct?

[C.C.]  Yes.

[Trial Court]  Is there anything different about what we're doing here that makes it so that you can't answer these questions?

[C.C.]  No.

[Trial Court]  Would you try?

[C.C.]  I can't.  (Crying)

[Trial Court]  You can't?  Can you think of anything that I might be able to do to make you more comfortable so that you can?

[C.C.]  (Crying)

Id. at 491-92.  During attempted follow-up questions by the State, C.C. continued crying and responded "no" to the questions: "Is there anything that you can think of that anybody can do that would help you be able to testify today in Court?" and "Do you think it would help at all if you didn't have to testify until Monday?"  Id. at 493.  The defense asked several questions about with whom C.C. talked during the break, and she responded appropriately.  Id.  After entertaining arguments of counsel, the trial court determined that C.C. was unavailable to testify.  Over Howard's objection the trial court allowed an edited version of C.C.'s pre-trial deposition to be introduced into evidence and read to the jury.

3

At the close of trial the jury found Howard guilty of one count of child molesting as a Class A felony and not guilty on the remaining counts. The trial court sentenced Howard to thirty-five years in the Department of Correction. Howard appealed raising several issues for review including whether he was denied the right of confrontation. The Court of Appeals affirmed. See Howard v. State, 816 N.E.2d 948 (Ind. Ct. App. 2004). We now grant Howard's petition to transfer, reverse the judgment of the trial court, and remand this cause for further proceedings.

**Discussion**

**I.**

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The Fourteenth Amendment makes this right of confrontation obligatory upon the states.[1] Pointer v. Texas, 380 U.S. 400, 406 (1965); Brady v. State, 575 N.E.2d 981, 985 (Ind. 1991). The essential purpose of the Sixth Amendment right of confrontation is to ensure that the defendant has the opportunity to cross-examine the witnesses against him. State v. Owings, 622 N.E.2d 948, 950 (Ind. 1993). As this Court has recognized, the right to adequate and effective cross-examination is fundamental and essential to a fair trial. Id. It includes the right to ask pointed and relevant questions in an attempt to undermine the opposition's case, as well as the opportunity to test a witness' memory, perception, and truthfulness. Id.

The standard for determining whether the admission of a hearsay statement against a criminal defendant violates the right of confrontation was modified in Crawford v. Washington, 541 U.S. 36 (2004). Before Crawford, the issue was controlled by the Supreme Court's holding in Ohio v. Roberts, 448 U.S. 56 (1980). Under Roberts, a hearsay statement of an absent witness could be admitted in a criminal trial without violating the right of confrontation if (1) it was shown that the declarant was unavailable and (2) the out-of-court statement bore adequate indicia

---

[1] Before the Court of Appeals Howard contended that he was deprived of his right of confrontation under Article I, Section 13(a) of the Indiana Constitution as well as the Sixth Amendment to the U.S. Constitution. The Court of Appeals declined to address the state constitutional claim because Howard failed to provide separate analysis. On transfer Howard raises no issue of error in this regard. We therefore address the federal constitutional claim only.

4

of reliability. This test focused upon the reliability of the statement. As the Roberts Court explained, a statement had adequate indicia of reliability if it either fell within a firmly rooted hearsay exception or if it bore "particularized guarantees of trustworthiness." Id. at 65-66.

In Crawford, the Supreme Court dispensed with the reliability analysis set forth in Roberts and held instead that the admission of a hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment if (1) the statement was testimonial and (2) the declarant is unavailable and the defendant lacked a prior opportunity for cross-examination. The Court emphasized that if testimonial evidence is at issue, then "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68. A critical portion of the Court's holding was the phrase "testimonial evidence."

In this case Howard contends that in light of Crawford the trial court erred in allowing C.C.'s pre-trial deposition into evidence because (1) C.C. was not unavailable to testify at trial within the meaning of Crawford and (2) he was denied the right of cross-examination as required by Crawford.

We first observe there has been no claim in this case that the challenged statements in C.C.'s deposition were anything other than testimonial. Indeed witness statements made during depositions are generally understood and widely recognized as testimonial. See Davis v. Washington, 126 S.Ct. 2266, 2275-76 (2006). And Crawford itself acknowledged "[v]arious formulations of th[e] core class of 'testimonial statements,'" among them the "extrajudicial statements contained in formalized testimonial materials, such as affidavits, *depositions*, prior testimony, or confessions." Crawford, 541 U.S. at 51-52 (citations omitted, emphasis added). In any event, contrary to Howard's contention the Crawford Court neither defined nor addressed the meaning of "unavailability." As we recently observed, "[t]he more general unresolved issue under Crawford is what it means to say a witness is 'available at trial for cross-examination.'" Fowler v. State, 829 N.E.2d 459, 465 (Ind. 2005).

In Fowler, the defendant's wife was the State's key witness in a prosecution for domestic battery. Called to the stand, the wife answered some preliminary questions asked by the State.

5

But after being shown pictures of herself taken at the scene and asked how that happened, she responded, "I don't want to testify. I can't do this . . . . I don't want to testify no more!" Id. at 462. After a recess defense counsel attempted to cross-examine the wife. She responded in much the same fashion as she had responded to the State. On grounds of the excited utterance exception to the hearsay rule, and over the defendant's hearsay objection, the trial court admitted into evidence the wife's statements given to a police officer the day the alleged offense occurred. The defendant was convicted, and his conviction was affirmed on appeal. On transfer we addressed an issue similar to the one before us:

> The precise issue in this case is whether a witness who is present and takes the stand, but then refuses to testify with no valid claim of privilege, is a witness who "appears for cross-examination" (as that term is used in Crawford) if no effort is made to compel the witness to respond.

Id. at 465. Acknowledging the difficult choices that defendants and lawyers must make in highly charged settings such as a victim's refusal to testify, and expressing sympathy for victims of domestic violence, we concluded, "the defendant must ask the trial judge to put a recalcitrant witness to the choice of testifying or contempt, or forgo a Confrontation Clause challenge to the introduction of the witness's earlier statements." Id. at 462. In essence, we determined that a witness who takes the stand but refuses to answer questions, with no claim of privilege, is "available" until she refuses to answer questions after being ordered to do so. Id. at 461.

Our conclusion in Fowler is uniquely suited for reluctant adult witnesses in general and reluctant adult victims of domestic violence in particular because this category of witnesses is "left to the harsh reality of ordinary trial procedures." Id. at 462. However, as we noted, the legislature has provided a mechanism for determining the availability of "child victims of sexual abuse" who "by virtue of their age, are by far the most likely candidates to be unable or unwilling to testify at the trial of the person accused of abusing them." Id. at 461. With Indiana Code section 35-37-4-6, sometimes referred to as the protected person statute, our legislature has enacted specific provisions intended to preserve the confrontation rights of the accused while at the same time "reducing the trauma for child victims in sexual abuse cases and easing the task of

6

prosecuting the perpetrators." Miller v. State, 517 N.E.2d 64, 71 (Ind. 1987), superceded by statute on other grounds.[2]

Under the protected person statute a determination that a child witness is unavailable may be predicated only upon a trial court finding (1) from testimony of a psychiatrist, physician, or psychologist and other evidence, if any, that the child will suffer emotional distress such that she cannot reasonably communicate if testifying in the physical presence of the defendant, (2) the child cannot participate at trial for medical reasons, or (3) the child is legally incompetent to

---

[2] At the time of trial Indiana Code section 35-37-4-6 (1994) provided in relevant part:

> (c) A statement or videotape that:
> > (1) is made by a person who at the time of trial is a protected person;
> > (2) concerns an act that is a material element of an offense listed in subsection (a) that was allegedly committed against the person; and
> > (3) is not otherwise admissible in evidence;
> is admissible in evidence in a criminal action for an offense listed in subsection (a) if the requirements of subsection (d) are met.
> (d) A statement or videotape described in subsection (c) is admissible in evidence in a criminal action listed in subsection (a) if, after notice to the defendant of a hearing and of his right to be present, all of the following conditions are met:
> > (1) The court finds, in a hearing:
> > > (A) conducted outside the presence of the jury; and
> > > (B) attended by the protected person;
> > that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.
> > (2) The protected person:
> > > (A) testifies at the trial; or
> > > (B) is found by the court to be unavailable as a witness for one (1) of the following reasons:
> > > > (i) the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.
> > > > (ii) The protected person cannot participate in the trial for medical reasons.
> > > > (iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.
> (e) If a protected person is unavailable to testify at the trial for a reason listed in subsection (d)(2)(B), a statement or videotape may be admitted in evidence under this section only if the protected person was available for cross-examination:
> > (1) at the hearing described in subsection (d)(1); or
> > (2) when the statement or videotape was made.

The statute was amended in 2004 and again in 2005. Those amendments, however, do not affect our analysis.

testify.[3]   If the child is found to be unavailable for trial by the existence of any one of the foregoing circumstances, and the trial court finds sufficient indications of reliability, then the child's deposition may be admitted in evidence "if the [child] was available for cross-examination . . . when the statement . . . was made." Ind. Code § 35-37-4-6(f); I.C. § 35-37-4-6(e) (1994).

As explained in more detail in part II below, we conclude that C.C. was available for cross-examination when her deposition was taken.  However, notwithstanding that conclusion, the trial court erred in allowing C.C.'s deposition into evidence because C.C. was not shown to be unavailable for trial.  In sum, for Confrontation Clause purposes a hearsay statement that allowed a prior opportunity for cross-examination may be admitted into evidence but only if the declarant is unavailable.  C.C. was not unavailable within the meaning of the protected person statute – the mechanism for determining trial unavailability for children that are alleged to have been sexually abused.[4]  It is true the record shows that C.C. was apparently emotionally upset when called upon to testify. But there was no testimony by a medical or mental health professional about the nature and extent of her condition.  Nor was there a finding by the trial court that C.C. was unable to participate at trial for medical reasons or that C.C. was legally incompetent to testify.

Because C.C. was present at trial and took the stand but refused to testify, we conclude that in the absence of an unavailability finding pursuant to the protected person statute, C.C. was not "unavailable."  The judgment of the trial court is therefore reversed and Howard's conviction is set aside.  This does not however end our analysis.  The evidence in this case, specifically

---

[3] It does seem counterintuitive that one of the admissibility requirements for a child's statement may be met by showing that the child "is incapable of understanding the nature and obligation of an oath."  I.C. § 35-37-4-6(e)(2)(B)(iii); I.C. § 35-37-4-6(d)(2)(iii) (1994).  However as we previously observed "a witness' legal incompetency merely affects the admissibility of his in-court testimony and does not bar admission of his out-of-court statements."  Miller, 517 N.E.2d at 72 n.7 (citing Hopper v. State, 489 N.E.2d 1209, 1212 n.4 (Ind. Ct. App. 1986)).

[4] But see Guy v. State, 755 N.E.2d 248, 254 (Ind. Ct. App. 2001) (finding child unavailable within the meaning of Indiana Evidence Rule 804(a)(2) and allowing deposition testimony into evidence, rejecting claim that doing so undermined the legislative purposes of the protected person statute).  As we observed in Fowler, although federal and state evidence rules "offer guidance as to the meaning of 'available for cross-examination' as Crawford uses that term" we nonetheless "cannot import the availability doctrine of Rule 804(a) wholesale into Crawford."  Fowler, 829 N.E.2d at 469.

8

C.C.'s deposition testimony, was sufficient to support the jury's verdict. As a result there is no double jeopardy bar to retrial. See Smith v. State, 721 N.E.2d 213, 220 (Ind. 1999). And should the State decide to retry Howard, and if a proper unavailability determination is made, the question remains whether C.C.'s pre-trial deposition may be admitted into evidence. We now address this issue.

## II.

Although the protected person statute allows for the introduction at trial of a child's statement or videotape if, among other things, "the time, content, and circumstances of the statement or videotape provide *sufficient indications of reliability*," I.C. § 35-37-4-6(e)(1) (emphasis added); I.C. § 35-37-4-6(d)(1) (1994), the emphasized language was apparently intended to be consistent with Roberts. See, e.g., Miller, 517 N.E.2d at 68 (discussing a prior version of the protected person statute and declaring that admission of an out-of-court statement of a witness who does not testify at trial does not violate the Sixth Amendment if the witness is shown to be unavailable and the statement has adequate "indicia of reliability") (citing Roberts, 448 U.S. at 66). But Crawford dictates that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69. Thus before the deposition testimony of a child covered by the protected person statute may be introduced at trial, the Sixth Amendment demands "unavailability *and* a prior *opportunity* for cross-examination." Id. at 68 (emphasis added).

Crawford, however, provides no guidance concerning what "opportunity" is sufficient to satisfy the demands of the Sixth Amendment. Distinguishing between a "discovery" deposition and a "trial" deposition, Howard insists that he had no "adequate opportunity" to cross-examine the child witness in this case.[5]

_____

[5] The "adequate opportunity" phrase on which Howard relies appears in Crawford as a part of the Court's broader discussion about the historical basis for a prior opportunity to cross-examine witnesses. "Our later cases conform to Mattox's [Mattox v. United States, 156 U.S. 237 (1895)] holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine." Crawford, 541 U.S. at 57. Although the adequacy language does not appear in the actual holding of the Crawford Court, we have no doubt that it is implicitly included.

We acknowledge that trial counsel's motivation for taking a deposition solely for the purpose of discovery may differ from that of a deposition to perpetuate testimony.[6] As one commentator has noted, "[m]ost litigators think of two kinds of depositions: discovery depositions and testimonial depositions." Henry H. Perritt, Jr., Trade Secrets: A Practitioners Guide, P.L.I. § 10:10.1 (2005). During testimonial depositions, more attention is paid "to the form of questions . . . [and] to cross-examination . . . . It is not uncommon for key witnesses to be deposed twice by the same party, once for discovery purposes and again for testimonial purposes." Id.[7] But we make two observations. First, although Howard contends that the

---

[6] As Howard contends, "[t]he distinction between a 'discovery' deposition and a 'trial' deposition is not insignificant. The intended purposes of the two types of depositions are entirely different. Cross-examination inherent in a trial deposition is succinct and to the point. The goal is to disparage the witness' testimony before the trier of fact and accentuate that evidence which is favorable to the defendant. Cross-examination at a trial deposition would be intended to cast doubt on the credibility of the witness so that their testimony is not worthy of the jury's belief. A pre-trial discovery deposition, on the other hand, is intended to search out information about the state's case. Often times, such a deposition is not intended to be 'confrontational' because the deposing party wishes to encourage the witness to volunteer as much information as he or she can." Pet. to Trans. at 8-9.

[7] But see Daniel E. Monnat & Paige A. Nichols, The Kid Gloves Are Off: Child Hearsay After Crawford v. Washington, 30-FEB Champion 18, 21 (2006):

> Cautious defense counsel should consider Crawford fair warning that squandered opportunities may be viewed as waivers. In particular, if the prosecution produces a child for a preliminary hearing or a deposition, defense counsel might be well-advised to conduct as full a cross-examination as is possible given the state of discovery at the time if there is any doubt whether the child might appear at trial. While a couple of courts have questioned whether probable-cause preliminary hearings and discovery-driven depositions constitute adequate opportunities for confrontation, commentators are encouraging prosecutors to present witnesses at these hearings on the assumption that Crawford will tolerate the admission of their testimonial statements at trial if they later become unavailable.

Our research reveals that only one other jurisdiction to date has addressed the question of whether discovery-driven depositions provide an adequate opportunity for confrontation as anticipated by Crawford. Interpreting its criminal procedural rules as distinguishing between depositions taken for discovery and depositions taken to perpetuate testimony, two districts of the Florida Court of Appeals declared that there is no adequate opportunity to cross-examine where a deposition is taken for the purpose of discovery. See Lopez v. State, 888 So.2d 693 (Fla. 1st Dist. Ct. App. 2004); Belvin v. State, 922 So. 2d 1046 (Fla. 4th Dist. Ct. App. 2006). Another district of the Florida Court of Appeals reached the opposite conclusion. See Blanton v. State, 880 So.2d 798 (Fla. 5th Dist. Ct. App. 2004); Corona v. State, 929 So.2d 588 (Fla. 5th Dist. Ct. App. 2006). In this jurisdiction, the Rules of Criminal Procedure do not distinguish between discovery depositions and testimonial depositions. See Ind. Crim. Rule 21; Ind. Trial Rule 30.

purpose of the deposition in this case was "for discovery" only, counsel for Howard nonetheless conducted a vigorous and lengthy examination. The deposition lasted approximately two hours and resulted in ninety-two typewritten pages, nearly all of which constitute counsel's examination of C.C. Appellant's App. Vol. II.[8] We thus disagree with Howard's claim that he was denied his right of confrontation. See Abner v. State, 479 N.E.2d 1254, 1262 (Ind. 1985) (rejecting claim that defendant was denied right of confrontation by admission of discovery deposition into evidence where forty pages of a 124-page deposition were devoted to defense counsel's examination of witness).

Second, and perhaps more importantly, Crawford speaks only in terms of the "opportunity" for adequate cross-examination. The right of confrontation under the Sixth Amendment is honored where "the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Maryland v. Craig, 497 U.S. 836, 847 (1990) (quoting Delaware v. Fensterer, 474 U.S. 15, 22 (1985) (per curiam)). Whether, how, and to what extent the opportunity for cross-examination is used is within the control of the defendant.

Although the following cases were decided before Crawford, they recognize the rule that prior testimony from a subsequently unavailable witness is admissible at a subsequent trial, provided the defendant had the opportunity to confront the witness when the testimony was originally given. See Jackson v. State, 735 N.E.2d 1146, 1150 (Ind. 2000) (deposition testimony); Owings, 622 N.E.2d at 950 (deposition testimony); Ingram v. State, 547 N.E.2d 823, 826 (Ind. 1989) (deposition testimony); Coleman v. State, 546 N.E.2d 827, 829 (Ind. 1989) (deposition testimony); Hammers v. State, 502 N.E.2d 1339, 1344 (Ind. 1987) (testimony given at bail hearing); Abner, 479 N.E.2d at 1262 (deposition testimony). Only where a defendant has never had the opportunity to confront and cross-examine a witness does the admission of prior testimony at a subsequent proceeding violate the constitutional right of confrontation. See, e.g.,

---

[8] The record shows that defense counsel actually deposed C.C. on two occasions. The first deposition took place in April 2003, was terminated at C.C.'s request, and then resumed two months later. Unlike the first deposition, the full text of the second deposition is not included in the record. However, excerpts appear in the record and were introduced into evidence at trial. See Tr. at 725-50.

<u>Brady</u>, 575 N.E.2d at 989 (videotaped testimony taken outside the presence of defendant and used at trial); <u>Miller</u>, 517 N.E.2d at 74 (videotaped statement of child where defendant received no notice); <u>Driver v. State</u>, 594 N.E.2d 488, 489-90 (Ind. Ct. App. 1992) (testimony from prior trial at which defendant did not have the opportunity for a face-to-face confrontation).

## Conclusion

Because there was no showing that C.C. was unavailable for trial within the meaning of the protected person statute, the trial court erred in allowing C.C.'s pretrial deposition into evidence. We conclude however that Howard had a full, fair, and adequate opportunity to confront and cross-examine C.C., within the meaning of the Sixth Amendment, when her pretrial deposition was taken. Accordingly, subject to a trial court finding of unavailability consistent with the protected person statute, C.C.'s deposition may be introduced into evidence at any subsequent retrial.

The judgment of the trial court is reversed and this cause remanded.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

12